J-S58012-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
EUGENE JAMES MCCARTHY :
:
Appellant : No. 145 WDA 2018

Appeal from the PCRA Order January 8, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0011401-2012

BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.: FILED NOVEMBER 05, 2018

Appellant, Eugene James McCarthy, appeals from the order entered on

January 8, 2018, dismissing his first petition filed pursuant to the Post

Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

On direct appeal, we briefly summarized the facts and procedural history

of this case as follows:

> On August 7, 2012, Appellant, Quintelle Rankin, and Rankin's
> nephew, Corey Estes, were driving around in Appellant's car
> looking for a marijuana source. While they were in the car,
> Appellant, who was driving near the Brinton Manor Apartment
> area said that it looked "like there was licks up there." Estes
> testified that "licks" is street slang for "robbery." Appellant parked
> the car and the trio began to walk around looking for people with
> marijuana.
>
> Appellant and his comrades encountered two males sitting on the
> steps of one of the apartment buildings. One of the males,
> Brandon Johns ("Victim"), said that he had marijuana and the trio
> followed him to a nearby building. When the four of them were in
> the building hallway, Victim sat on the steps, pulled out a bag of

marijuana and a scale, and began to weigh out some marijuana for $20.00 per gram, as they had discussed. Appellant proceeded to grab the entire bag of marijuana and said: "You might as well give me all the shit." Rankin and Victim then produced guns and exchanged gunfire. While he was shooting, Rankin closed his eyes while firing his gun at Victim's chest and shoulder area. Victim died from multiple gunshot wounds to the neck and chest.

On August 19, 2013, a jury convicted Appellant of [robbery (inflicts serious bodily injury), conspiracy to commit robbery (inflicts serious bodily injury), and third-degree murder[1]] and acquitted Appellant of second-degree murder and tampering with evidence. [The same jury convicted Rankin of second-degree murder, robbery (serious bodily injury), criminal conspiracy (robbery), and carrying a firearm without a license and acquitted Rankin of first-degree murder.] On November 18, 2013, the trial court sentenced Appellant to thirteen (13) to twenty-six (26) years' incarceration. [This Court affirmed Appellant's judgment of sentence in an unpublished memorandum on January 15, 2016 and our Supreme Court denied further review. Commonwealth v. McCarthy, 2016 WL 193402 (Pa. Super. 2016), appeal denied, 141 A.3d 479 (Pa. 2016).]

Commonwealth v. McCarthy, 2016 WL 193402, at *1 (Pa. Super. 2016) (unpublished memorandum) (record citations and some footnotes omitted).

On November 9, 2016, Appellant filed a pro se PCRA petition. The PCRA court appointed PCRA counsel, who ultimately withdrew after obtaining leave of court. Thereafter, Appellant retained private counsel who filed an amended PCRA petition on June 22, 2017. After granting several extensions, the PCRA court entered notice of its intent to dismiss the amended PCRA petition pursuant to Pa.R.Crim.P. 907 on September 12, 2017. After receiving a response from Appellant, the PCRA court ultimately held an evidentiary

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(i), 903, and 2502(c), respectively.

hearing on January 8, 2018. The PCRA court dismissed Appellant's PCRA petition by order entered on January 8, 2018. This timely appeal resulted.[2]

On appeal, Appellant presents the following issues for our review:

[2.] Was [t]rial [c]ounsel ineffective, causing a conflict of interest for acting as both a witness and an advocate at trial?

[1.] Was [t]rial [c]ounsel ineffective for failing to request an accomplice charge at trial?

Appellant's Brief at 4.[3]

Appellant challenges the denial of his ineffective assistance of counsel claims under the PCRA. We previously determined:

Our standard of review of a PCRA court order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error.

*          *          *

[Under the PCRA, c]ounsel is presumed to be effective. To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must prove each of the following: (1) the underlying legal claim was of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and (3) the petitioner was prejudiced—that is, but for counsel's deficient stewardship, there is a reasonable likelihood the outcome of the proceedings would have been different.

_____

[2] On January 22, 2018, Appellant filed a notice of appeal. On January 23, 2018, the PCRA court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely. The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 10, 2018.

[3] We reordered the issues presented for east of disposition.

Commonwealth v. Pier, 182 A.3d 476, 478 (Pa. Super. 2018) (internal citations and quotations omitted).

In his first issue presented, Appellant claims that trial counsel "was ineffective and had a conflict of interest where she acted as both an advocate and a witness in defense of her own credibility." Appellant's Brief at 9. At trial, "Commonwealth witness Corey Estes [testified that] defense counsel visited him alone in the Allegheny County Jail on two occasions to try and get him to suborn perjury and change his testimony against [Appellant]." Id. Appellant claims that the jury was diverted from the facts of this case and more focused on his attorney defending herself. Id. at 10-11. Citing Pennsylvania Rule of Professional Conduct 3.7, Appellant argues that an attorney should not act as both an advocate and a necessary witness. Id. at 12. Appellant claims that once trial counsel's credibility was questioned, she should have withdrawn from the case. Id. at 14.

On this issue, the PCRA court opined:

The record establishes that trial counsel visited Corey Estes two times (once with an investigator) in the Allegheny County Jail to interview him about his trial testimony. Just before trial, trial counsel learned that Estes was falsely claiming that [during a visit] trial counsel attempted to convince him to alter his statements and testify favorably for [Appellant] at trial. [At trial,] counsel [] cross-examined Estes on these allegations [] and essentially attempted to argue to the jury that Estes' lies about her attempts to suborn perjury should cause the jury to have doubts about the remainder of his trial testimony that incriminated [Appellant]. [Appellant] claims that trial counsel's efforts to link Estes' lack of credibility about [Appellant's] involvement in the crimes charged in this case to [the lack of credibility to be inferred from Estes' allegations] against trial counsel created a conflict of interest

- 4 -

because trial counsel was acting as both a witness and an advocate in this case. The record belies such conclusion.

Trial counsel's efforts on cross-examination to establish that Estes had lied when he accused her of exhorting him to alter his previous statements to the authorities and provide exculpatory testimony for [Appellant] was based on a sound trial strategy. Trial counsel was attempting to convince the jury that if Estes was lying about her, he was lying about [Appellant's] involvement in the robbery/homicide. Trial counsel was cleverly attempting to discredit Estes by arguing that he had lied to the District Attorney's Office about her actions. Trial counsel testified [at the PCRA evidentiary hearing] that the efforts to buttress her integrity by arguing that Estes was a liar were designed to benefit her client in the trial. [The PCRA c]ourt [found] no fault with such a tactic or strategy and believe[d] it was consistent with the effective representation of [Appellant].

PCRA Court Opinion, 5/10/2018, at 5-6.

We agree with the PCRA court's assessment. Trial counsel had a reasonable basis that supported her attempt to impeach a key Commonwealth witness' credibility at trial. The Commonwealth elicited testimony from Estes that Appellant's counsel visited him in jail to question him without his attorney present. N.T., 8/6/2013, at 273-277. Estes testified on cross-examination that he told police that trial counsel asked him to perjure himself. Id. at 302. The Commonwealth raised the issue, thereby opening the door to cross-examining Estes regarding his interactions with trial counsel. Moreover, Appellant has not explained how there was an actual conflict of interest. Trial counsel was not a material witness to the crimes at issue. Instead, trial counsel was solely advocating for Appellant. Cross-examining Commonwealth witness Estes regarding his history for truthfully describing the events related to this case aligned completely with Appellant's defense. As such, trial counsel

had a reasonable basis for her actions and we conclude Appellant's first ineffective assistance of counsel claim fails.

Next, Appellant argues that trial counsel was ineffective for not requesting a "corrupt and polluted source" jury charge regarding Estes' testimony as an accomplice. Appellant's Brief at 15-18. Appellant argues that the PCRA court erred by determining trial counsel had a reasonable strategy because "counsel herself testified [at the PCRA hearing] that there was no trial strategy in objecting to the charge." Id. at 16.

The PCRA court determined:

> During the PCRA hearing, trial counsel explained that her trial strategy was that [Appellant] was not an accomplice with anyone to a robbery or a homicide. [Appellant's] trial strategy was that he planned to purchase marijuana and he had no knowledge that a robbery or homicide was going to occur. It is illogical [...] for trial counsel to pursue a theory that [Appellant] had no involvement in or knowledge about a robbery and/or a homicide and then ask for a jury instruction informing the jury that the central Commonwealth witness was an accomplice with [Appellant] in those crimes. Keeping such an instruction from the jury was rationally related to [Appellant's] trial strategy. Therefore, the record reflects that trial counsel had a sound strategy for not requesting (and even objecting to) an instruction concerning the credibility of accomplices.

PCRA Court Opinion, 5/10/2018, at 6-7.

Upon review, we agree. Initially we note that at the PCRA hearing, trial counsel testified that she did not remember objecting to the corrupt source instruction and, therefore, could not remember her strategy regarding it. N.T., 1/8/2018, at 25. However, trial counsel further testified as follows:

> The theory of the case was that [Appellant] went with his two friends to buy marijuana and whatever happened in that stairwell, he had no foreknowledge and was not in any kind of conspiracy to shoot anybody or rob anybody. He just went with his friends to buy weed. That was the theory of the case.

Id. at 26.

The "corrupt and polluted source" instruction informs the jury that an accomplice's trial testimony, which implicates the defendant, should be viewed with great caution. See Commonwealth v. Wholaver, 177 A.3d 136, 165 (Pa. 2018) (original quotations and citation omitted). "Our courts have regularly recognized a reasonable strategy in trial counsel's decision to forego a discretionary corrupt source charge where the charge is inconsistent with a defendant's assertion that he has not committed the crime in question." Commonwealth v. Lawrence, 165 A.3d 34, 45 (Pa. Super. 2017), citing Commonwealth v. Karabin, 426 A.2d 91 (Pa. 1981) (deeming reasonable tactic to forego corrupt source instruction against girlfriend witness, who allegedly rode in car with defendant during shootings; defendant advanced innocence defense and alleged jealousy motivated girlfriend to testify falsely) and Commonwealth v. Johnson, 437 A.2d 1175 (Pa. 1981) (holding decision to forego instruction was within realm of reasonable defense strategy to accuse witness, a leader of street gang splinter group, of framing gang-member defendant who asserted complete innocence). Here, Appellant claimed he was innocent of the robbery and homicide. Thus, it was a reasonable strategy for counsel to weigh the cautionary judicial instruction against the downside of tacitly admitting to the jury that Estes was an

accomplice of Appellant in the commission of the instant offenses.   As such,

Appellant's second issue fails.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:   11/5/2018