J-S01041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                         :                 PENNSYLVANIA
                                                         :
                    v.                               :
                                                         :
                                                         :
AZIM ROBINSON                           :
                                                         :
                    Appellant                    :   No. 1079 MDA 2024

Appeal from the PCRA Order Entered July 8, 2024
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0001863-2016

BEFORE:   NICHOLS, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                   **FILED: FEBRUARY 7, 2025**

Appellant Azim Robinson appeals the order of the Court of Common

Pleas of Centre County denying his petition pursuant to the Post-Conviction

Relief Act (PCRA).[1]  Appellant argues that the PCRA court erred in resolving

several of his claims without holding an evidentiary hearing and dismissing his

multiple challenges to the effectiveness of his trial counsel.  We affirm.

Appellant was charged with multiple counts of drug trafficking offenses,

criminal conspiracy, as well as a communications charge in connection with

allegations that he ran a criminal enterprise to deliver cocaine and heroin

through multiple dealers.  At Appellant's jury trial that was held in November

2017, the prosecution presented the testimony of multiple confidential

informants who indicated that they contacted Appellant on several occasions

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

for the arrangement of the sale of illicit drugs. Some of the informants testified that they bought drugs directly from Appellant while others testified that Appellant arranged for one of his dealers to deliver drugs to them. The prosecution also presented the testimony of State College Police Detective Donald Paul who served in the criminal investigations division and drug enforcement section as well as the Centre County Drug Task Force.

As a defense strategy, Appellant's trial counsel did not dispute that the drug sales had occurred, but instead argued that the Commonwealth failed to show Appellant had any involvement in these deliveries or the arrangements of any of the drug buys.

At the conclusion of the trial, the jury convicted Appellant on three counts of possession with intent to deliver a controlled substance, fourteen counts of delivery of a controlled substance, one count of conspiracy to deliver a controlled substance, and one count of criminal use of a communication facility. On November 27, 2017, the trial court sentenced Appellant to 178 to 600 months' imprisonment. On appeal, this Court affirmed the judgment of sentence. ***Commonwealth v. Robinson***, No. 1862 MDA 2017, 2018 WL 5857869 (Pa.Super. Nov. 9, 2018) (unpublished memorandum). The Supreme Court denied Appellant's petition for allowance of appeal. ***Commonwealth v. Robinson***, 791 MAL 2018 (Pa. April 24, 2019).

On February 10, 2020, Appellant filed a timely *pro se* PCRA petition. After PCRA court appointed Appellant counsel, Appellant filed an amended petition on March 25, 2022, claiming *inter alia*, that trial counsel was

- 2 -

ineffective for failing to object to Detective Paul's testimony as impermissible expert opinion, failing to request a particular expert witness instruction, failing to object to a remark made by the prosecutor in closing argument, and failing to call certain witnesses to testify on Appellant's behalf.

In an order dated May 23, 2022, the PCRA court notified Appellant of its intent to dismiss several of his claims without a hearing. However, the PCRA court indicated that it would hold a limited evidentiary hearing on Appellant's claim that trial counsel was ineffective in failing to call certain witnesses.

Thereafter, when Appellant's counsel was permitted to withdraw for personal reasons, the PCRA court appointed Appellant new counsel, who supplemented Appellant's petition with additional claims.[2] On July 20, 2023, Appellant filed a second amended petition, claiming trial counsel was ineffective for failing to properly seek a "corrupt and polluted source" jury instruction and in failing to ensure that the accomplice jury instruction was complete and accurate.

---

[2] The case was delayed considerably from the filing of Appellant's original *pro se* petition as two of the attorneys that were appointed to represent Appellant sought to withdraw their representation and Appellant sought to replace the third attorney appointed on his behalf. The trial court appointed still another attorney, Appellant's fourth, who filed Appellant's second amended petition and continues to represent him in this collateral appeal.

On February 29, 2024, the PCRA court held an evidentiary hearing at which trial counsel testified.[3] Thereafter, on July 1, 2024, the PCRA court dismissed Appellant's second amended petition.

Appellant raises the following issues for review:

I. Did the [PCRA] court commit an abuse of discretion and/or error of law in dismissing certain PCRA issues without benefit of a hearing?

II. Did the [PCRA] court commit an abuse of discretion and/or error of law in concluding that trial counsel was not effective in failing to object to the jury instructions provided at trial as it relates to:

   a. Failure to give a complete and accurate accomplice instruction[;]

   b. Failure to give a corrupt and polluted source instruction[?]

PCRA Court Opinion, 7/8/24, at 1-2 (reordered for review).

We address the propriety of the PCRA court's denial order as follows:

[O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

***Commonwealth v. Miranda***, 317 A.3d 1070, 1075 (Pa.Super. 2024)

(quoting ***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super.

---

[3] Appellant withdrew his argument that trial counsel was ineffective in failing to call certain witnesses, as Appellant conceded that he could not prove this claim at the evidentiary hearing.

- 4 -

2019)). With respect to the PCRA court's decision to hold a limited evidentiary hearing, "such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." *Commonwealth v. Maddrey*, 205 A.3d 323, 327 (Pa.Super. 2019) (quoting *Commonwealth v. Mason*, 634 Pa. 359, 130 A.3d 601, 617 (2015)).

First, Appellant argues that the PCRA court erred in denying him an evidentiary hearing on his claim that trial counsel was ineffective in failing to object to Detective Paul's testimony as impermissible expert opinion and failing to request a particular expert witness instruction. It is well settled that:

> there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Hanible*, 612 Pa. 183, 30 A.3d 426, 452 (2011).

*Maddrey*, 205 A.3d at 328.

In reviewing Appellant's ineffectiveness challenges, we are guided by the following principles:

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987); *Strickland v. Washington*, 466 U.S. 668,

- 5 -

104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." ***Commonwealth v. Basemore***, 560 Pa. 258, 744 A.2d 717, 738 n.23 (2000).... Because courts must presume that counsel was effective, it is the petitioner's burden to prove otherwise. ***See Pierce***, ***supra***; ***Commonwealth v. Holloway***, 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

***Commonwealth v. Johnson***, 179 A.3d 1105, 1114 (Pa.Super. 2018)

(quoting ***Commonwealth v. Natividad***, 938 A.2d 310, 321 (Pa. 2007)).

Specifically, Appellant argues that the trial counsel was ineffective in failing to object to Detective Paul's testimony on cell phone extraction, which Appellant characterized as outside the scope of a layperson's testimony. Appellant argues that it was improper for the trial court to allow Detective Paul to testify as an expert, when he had not been qualified as such.

Pennsylvania Rule of Evidence 701 provides the following limitations on lay witness testimony:

**Pa.R.E. 701. Opinion Testimony by Lay Witnesses.**

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

It is important to note that "[t]echnical expertise does not *ipso facto* convert a fact witness, who might explain how data was gathered, into an expert witness, who renders an opinion based on the data[.]" ***Branham v.***

- 6 -

***Rohm & Haas Co.***, 19 A.3d 1094, 1110 (Pa.Super. 2011). "Fact testimony may include opinion or inferences so long as those opinions or inferences are rationally based on the witness's perceptions and helpful to a clear understanding of his or her testimony." ***Brady by Brady v. Ballay***, 704 A.2d 1076, 1082 (Pa.Super. 1997).

In ***Commonwealth v. T.B.***, 232 A.3d 915 (Pa.Super. 2020), this Court rejected the appellant's claim that the trial court improperly allowed a prosecution witness to testify about her forensic interview with the child victim when the witness was never qualified as an expert. This Court found the witness's testimony was admissible as she explained the interview process, the interview form that was utilized, and the importance of documenting sensory detail, which was helpful for the factfinder to have a clear understanding of the interview. This Court emphasized that the prosecution witness did not offer any opinion testimony based on the child victim's report of sensory detail, but merely explained how the interview was composed.

Likewise, in this case, Officer Paul did not give expert testimony when he explained how the cell phone extractions were performed, what information was obtained, and the limitations of the extraction process. Officer Paul's testimony was helpful for the jury to understand the cell phone communication discovered between Appellant and various individuals, along with their locations at the time of the relevant messages. Detective Paul's testimony

with respect to a smartphone's ability to forward data was not specialized knowledge outside the jury's understanding.[4]

As such, we agree with the PCRA court's finding that this issue is meritless and did not warrant an evidentiary hearing. *Commonwealth v. Davis*, 326 A.3d 988, 993 (Pa.Super. 2024) (quoting *Commonwealth v. Spotz*, 587 Pa. 1, 896 A.2d 1191, 1210 (2006) ("[c]ounsel will not be deemed ineffective for failing to raise a meritless claim")).

Second, Appellant contends that the PCRA court erred in denying him an evidentiary hearing on his claim that trial counsel was ineffective in failing to object to an improper remark made by the prosecutor in closing argument. Appellant argues that he was denied a fair trial as he alleges that the prosecutor's comment was not based on evidence presented at trial.

It is well settled that "our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial." *Commonwealth v. Campbell*, 260 A.3d 272, 281 (Pa.Super. 2021). "In reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Commonwealth v. Santiago-Burgos*, 314 A.3d 535, 547 (Pa.Super. 2024) (citation omitted).

---

[4] Further, when Officer Paul was asked to explain the meaning behind a specific text message, defense counsel objected on the basis of improper expert testimony and the trial court sustained the objection.

"A prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments. Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made." [**Commonwealth v.**] **Elliott**, [622] Pa. [236], 80 A.3d [425,] 443 [(Pa.Super. 2013)] (quotation omitted).

> Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial[.] Reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

[**Commonwealth v.**] **Spotz**, 616 Pa. at 222, 47 A.3d at 98 (citations omitted).

**Commonwealth v. Burno**, 626 Pa. 30, 60–61, 94 A.3d 956, 974 (2014).

We start by reviewing the context in which the prosecutor made the comment that Appellant finds objectionable. In Appellant's closing argument, defense counsel first made the following comment to the jury, in which he questioned the credibility of the prosecution's confidential informants by suggesting that they would not receive promised beneficial treatment if Appellant were acquitted of the offenses at trial.

> Trial Counsel: So you hear a couple of the confidential informants say there were no promises. I wasn't promised anything. I just want to do the right thing. You know darn well they are trying to help themselves out. They are hoping there is a benefit. They wouldn't be doing this if there wasn't a benefit. ***If Azim Robinson is found not guilty, then maybe they don't get the benefit that they are hoping for. They have to be held accountable for their crimes if he not convicted.*** They say they just want to do the right thing. They are good Samaritans I suppose but why would the Commonwealth have to subpoena

- 9 -

Good Samaritans. … What are you going to base your verdict on? Are you going to accept what these CIs said[?] Were they being truthful now or at any time throughout the investigation? Or are they going to say what they think the Commonwealth wanted to hear so they can get the maximum benefit on their own charges or their own issues they have going on so they can avoid a consequence?

Notes of Testimony (N.T.), 11/1/17, at 126-27 (emphasis added).

In response, the prosecutor made the following comment at the beginning of her closing argument:

I am going to use this podium this time. First of all, I think it's outrageous, outrageous, to suggest that their cooperation is dependent on your verdict. It's ludicrous. We would never – we would never put up a witness to lie to you. They don't know what other people are telling us and to suggest somehow they have to depend on what you decide for whether they are going to receive any benefit -- it's just outrageous to suggest.

N.T., 11/1/17, at 129.

In making this comment, the prosecutor was responding directly to defense counsel's insinuation that the informants would only receive a benefit if Appellant were convicted and that the prosecution was influencing the informants to give untruthful testimony. After reviewing the prosecutor's comment in the context in which it was made, we conclude that its effect was not such that it rendered the jury incapable of delivering a true verdict. As such, trial counsel cannot be found ineffective for failing to raise this meritless claim. *See Davis*, *supra*; *Spotz*, *supra*.

Third, Appellant claims trial counsel was ineffective in failing to ensure that the trial court gave the jury a complete and accurate accomplice instruction. Appellant argues that the trial court deviated from the standard

- 10 -

jury instruction regarding accomplices as it omitted a paragraph from the instruction.

Trial counsel asked the trial court to give the jury the following standard instruction on accomplices:

### 8.306(a)(1) Accomplice

1. There is a way that one defendant can be proved liable for the conduct of another person or persons. That is when the defendant is an accomplice of the person who actually commits the crime at issue.

2. To be an accomplice, a person does not have to agree to help someone else; the person is an accomplice if he or she, on his or her own, acts to help the other person commit a crime.

3. More specifically, you may find the defendant is an accomplice of another in this case if the following two elements are proved beyond a reasonable doubt:

   a. that the defendant had the intent of promoting or facilitating the commission of the offense of *[offense]*; and

   b. [the defendant [solicits] [commands] [encourages] [requests] the other person to commit it] [or] [[aids] [agrees to aid] [or] [attempts to aid] the other person in planning or committing it].

4. Accomplice liability must be assessed separately for each crime charged. If two or more crimes are committed, and the defendant before you is being charged as an accomplice for each of those crimes, he or she may not be found liable unless it is shown, as each individual crime, that this defendant had the intent of promoting the specific crime and then [[solicited] [commanded] [[encouraged] [requested] the other person to commit it] [or] [[aided] [agreed to aid] [or] [attempted to aid] the other person in planning or committing it]. In other words, you must decide whether the prosecution proved, beyond a reasonable doubt, that this defendant was an accomplice to the first crime, to the second crime, etc.

5. It is important to understand that a person is not an accomplice merely because he or she is present when a crime is committed, or knows that a crime is being committed.

6. To be an accomplice, the defendant must specifically intend to help bring about the crime by assisting another in its commission.

7. A person who is an accomplice will not be responsible for a crime if, and only if, the person, before the other person commits the crime, stops his or her own efforts to promote or facilitate the commission of the crime and does one of the following three things:

> a. wholly deprives his previous efforts of effectiveness in the commission of the crime;

> b. gives timely warning to the law enforcement authorities; or

> c. otherwise makes a proper effort to prevent the commission of the crime.

Pa. SSJI (Crim), §8.306(a)(1) (2024).

Appellant argues that the trial court's instruction was incomplete as it omitted paragraph 4. In similar circumstances, our Supreme Court has held:

> The Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial courts in crafting jury instructions; rather, as their title suggests, the instructions are guides only. *See Commonwealth v. Simpson*, 620 Pa. 60, 66 A.3d 253, 274–75 (2013) (citations omitted). Furthermore, counsel is not deemed ineffective for failing to object to a jury instruction given by the court where the instruction itself is justifiable or not otherwise improper. *See Commonwealth v. Rainey*, 593 Pa. 67, 928 A.2d 215, 243 (2007).

*Commonwealth v. Eichinger*, 631 Pa. 138, 178, 108 A.3d 821, 845 (2014) (counsel not ineffective in failing to object to the trial court's omission of specific language from a standard jury instruction as the instruction itself was justifiable and not otherwise improper).

In this case, the trial court's accomplice instruction was accurate and consistent with the Suggested Standard Jury Instructions. Although the trial court omitted a phrase, the instruction was justifiable and not otherwise improper. Therefore, we conclude that this ineffectiveness claim lacks arguable merit and decline to find counsel ineffective for failing to object to this instruction.

Lastly, Appellant claims trial counsel was ineffective in failing to ensure that the trial court gave the jury a corrupt source instruction. Specifically, Appellant claims that it was essential for trial counsel to request this instruction as the prosecution's theory of the case was that Appellant conducted a criminal enterprise with the assistance of accomplices, cooperators, and co-conspirators.

Our courts have explained that:

> [a] corrupt source instruction advises the jury that if it finds that a certain witness who testified against the defendant was an accomplice of the defendant in a crime for which he is being tried, then the jury should deem that witness a "corrupt and polluted source" whose testimony should be considered with caution. *Commonwealth v. (Roy) Williams*, 557 Pa. 207, 732 A.2d 1167, 1181 (1999); accord *Commonwealth v. Hackett*, 534 Pa. 210, 627 A.2d 719, 724 (1993). The instruction is warranted only in cases in which there is sufficient evidence to present a jury question with respect to whether the witness is an accomplice. *(Roy) Williams*, 732 A.2d at 1181; *Hackett*, 627 A.2d at 724.

*Commonwealth v. Collins*, 598 Pa. 397, 439, 957 A.2d 237, 262–63 (2008).

"The 'corrupt source' charge in particular is designed specifically to address situations where one accomplice testifies against the other to obtain favorable

treatment. It directs the jury to view the testimony of an accomplice with disfavor and accept it only with care and caution." *Commonwealth v. Lawrence*, 165 A.3d 34, 45 (Pa.Super. 2017).

Importantly, "[o]ur courts have regularly recognized a reasonable strategy in trial counsel's decision to forego a discretionary corrupt source charge where the charge is inconsistent with a defendant's assertion that he has not committed the crime in question." *Id.* In *Lawrence*, this Court found that trial counsel had a reasonable basis to refrain from requesting a corrupt source charge when the appellant denied having an accomplice relationship with the prosecution's witness, whom the appellant accused of independently attacking the victim. *See also Commonwealth v. Johnson,* 496 Pa. 546, 437 A.2d 1175 (1981) (holding decision to forego corrupt source instruction was within realm of reasonable defense strategy when the appellant had asserted complete innocence and accused the prosecution's key witness, a leader of street gang splinter group, of framing him to eliminate opposition from gang members who opposed drug dealing); *Commonwealth v. Karabin*, 493 Pa. 249, 426 A.2d 91 (1981) (deeming reasonable tactic to forego corrupt source instruction against girlfriend witness as it would derogate the appellant's defense that he did not commit the shootings and that his girlfriend's jealousy motivated her to testify falsely).

Similarly, in this case, Appellant's defense strategy was to concede that the confidential informants may have engaged in drug sales, but that Appellant was completely innocent of the charges filed as Appellant claimed

he had no involvement in the drug deliveries or the arrangements of any of the drug buys. If Appellant requested a corrupt source instruction, he would be admitting that the confidential informants and other witnesses were his accomplices in the sale and delivery of controlled substances, which would conflict with his defense theory. Thus, trial counsel's failure to request a corrupt source instruction was within the realm of reasonable defense strategy, we deny Appellant's ineffectiveness claim on this basis.

Moreover, we agree with the PCRA court's assessment that Appellant failed to show he was prejudiced by trial counsel's failure to request a corrupt source instruction as such an instruction would have had a "*de minimis* impact on the ultimate outcome of the trial." P.C.O., 7/8/24, at 8. The trial court aptly explained that:

> There is no reasonable probability that the outcome of the trial would have been different if Trial Counsel had requested and obtained a corrupt and polluted source instruction, particularly in light of the overwhelming amount of other evidence presented by the Commonwealth during trial. At trial, the Commonwealth put forward a number of witnesses who provided testimony of their experiences purchasing drugs from [Appellant] and/or [Appellant's] co-conspirators; four of these witnesses being individuals who were making controlled purchases of the drugs on behalf of law enforcement. The Commonwealth also introduced the content of text messages and phone calls which established [Appellant's] involvement in the drug transactions at issue. In this Court's view, it is a stretch of the mind that, had Trial Counsel obtained a particular jury instruction, the jury would have overlooked the substantial amount of evidence that tends to incriminate [Appellant] and weigh in favor of a conviction.
>
> Further, although the trial court did not provide a corrupt and polluted source instruction, the trial court did thoroughly instruct the jury about determining the credibility of witnesses.

> The trial court instructed the jury to weigh, analyze and judge the credibility and reliability of the witnesses; to consider whether the witnesses had a motive to lie; to consider whether bias or prejudice entered a witness's testimony; and to consider whether the witnesses had an interest in the outcome of the trial that would color the witness's testimony. A corrupt and polluted source instruction may have accomplished the same thing with fewer words, but the provided instructions regarding witness credibility were sufficient to allow the jury to make a fair assessment of the testimony that they were provided with.

P.C.O., 7/8/24, at 8.

We also note that this Court on direct appeal made a similar finding that the Commonwealth had "presented overwhelming evidence of Robinson's involvement in a criminal enterprise designed to traffic narcotics … including evidence of multiple controlled buys, eyewitness testimony from customers and co-conspirators, as well as evidence obtained from Robinson's phone." *Robinson*, 1862 MDA 2017, 2018 WL 5857869, at *4.

In light of the overwhelming evidence of Appellant's guilt and the trial court's instructions regarding witness credibility, we cannot find that Appellant is entitled to relief on this ineffectiveness claim.

For the foregoing reasons, we affirm the PCRA court's order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 02/07/2025